UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 07-22120-CIV-MCALILEY
[CONSENT CASE]

FISK ELECTRIC COMPANY,

   Plaintiff,

v.

SOLO CONSTRUCTION
CORPORATION et al.

   Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

  Pending before the Court is Defendants Solo Construction Corporation's and Liberty Mutual Insurance Company's Motion for Partial Summary Judgment. [DE 32]. Solo argues that a portion of the damages sought by Plaintiff, Fisk Electric Company, is barred as a matter of law by the contract between them. Liberty Mutual asserts that the same damages are not recoverable from it under its surety bond, issued pursuant to Florida Statute section 255.05. Fisk filed an opposition to the Motion [DE 35], and Defendants did not file a reply. For the reasons set forth below, the Motion for Partial Summary Judgment is denied.

**I. Background**

  It is well established that the Court, when deciding whether a summary judgment movant has met its burden, must view the evidence and all factual inferences arising from it, in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d

642, 645 (11th Cir. 1997). The Court recites the following facts, for summary judgment purposes, in that light.[1]

This action arises from a dispute between a general contractor, Defendant Solo, and its subcontractor, Plaintiff Fisk, concerning a construction project at the Miami International Airport know as the Midfield Expansion Project. [DE 35, p. 3]. Solo entered into a construction contract with the Miami-Dade Aviation Department (MDAD), under which Solo served as the general contractor for construction labor and services to Miami-Dade County. [*Id.*, DE 1, ¶ 8]. Solo, in turn, entered into a subcontract with Fisk under which Fisk provided the electrical services required under the construction contract, namely: (1) providing and maintaining the temporary lighting and electrical services that marked the runways, taxiways, crossovers, and boundaries of the construction areas and (2) installing the permanent aircraft traffic lighting, such as the centerline, edge, and hold lights for the runways, taxiways, and crossovers. [*Id.*] Liberty Mutual issued Solo a surety bond on the project. [*Id.*]

The project was divided into fifteen Maintenance of Airside Traffic ("MOT") Phases designed to safely accommodate aircraft and pedestrian traffic while construction was underway. Fisk relied on detailed drawings showing the sequence, scope of work, duration,

---

[1] Both Plaintiff and Defendants failed to provide an adequate statement of material facts as required by Local Rule 7.5.C. Defendants' statement does not provide specific references to the record [DE 32, pp. 2-3], while Plaintiff's statement does not specifically refute Defendants' statement of facts in corresponding numbered paragraphs. [DE 35, pp. 3-7]. As result, the Court does not have a clear record before it of material facts. Significantly, Defendants did not file a reply; thus most of Fisk's factual assertions are undisputed for the purposes of this motion.

and location of each MOT Phase, which were included in the contract documents Fisk used to preparing its bid. [*Id.*].

After Fisk mobilized, Solo and MDAD informed Fisk that MIA Airside Operations had not approved the MOT Phases. In fact, while Fisk worked on the project, Solo and MDAD substantially increased the duration of the MOT Phases and radically changed the sequence of work areas and the scope of the work in the Phases, significantly increasing Fisk's costs for material, labor and equipment. As a result, on October 30, 2006, Fisk provided Solo with a "Sworn Statement of Account," seeking an additional $551,238.00 for the increased direct costs of maintaining temporary airfield lighting and an additional $360,553.00 for additional on-site supervision and equipment costs (the "Phasing claims"), as well as other costs not at issue in this Motion. [*Id.*, pp. 4-6].

Solo submitted Fisk's claim to MDAD, certifying under oath that the claim "accurately reflects the amount of the claim that is due." In the submission to MDAD, Solo characterized Fisk's claim as being one for "delay." The Sworn Statement of Account by Fisk, however, does not use that term in describing the amounts sought and Fisk has never characterized its claims as being for "delay." [*Id.*, p. 5]. The parties dispute whether MDAD denied Fisk's claims. [DE 32, p. 3; DE 35, p. 6].

In January 2006, Solo brought suit against MDAD in state court seeking damages in excess of $3 million in connection with the airport construction, and MDAD asserted counterclaims against Solo. [DE 35, p. 6]. On August 16, 2007, Fisk brought this action against Solo for breach of the subcontract, and against both Defendants on the payment bond.

[DE 1]. Included in the damages sought by Fisk are the Phasing claims at issue in this Motion. [DE 1, ¶¶ 15, 16].

Fisk, Solo and MDAD attended a mediation on January 9, 2008, in an attempt to resolve all the disputes surrounding the airport project. At the mediation, in response to an inquiry by Solo, Fisk agreed to accept a lump sum payment of $750,000.00 as part of a final settlement between Solo and MDAD. Before the final settlement was reached, Solo, the mediator and MDAD were aware of the agreement between Fisk and Solo, that Solo would pay Fisk $750,000.00 of the settlement funds. MDAD paid Solo settlement funds, but Solo did not pay the $750,000.00 settlement amount to Fisk. [DE 35, pp. 6-7].

## II. Analysis

Solo and Liberty Mutual move for partial summary judgment on Fisk's Phasing claims. Solo argues that the Phasing claims fail because the subcontract between itself and Fisk contains no-damage-for delay clauses, and a pay-when-paid clause, that bar the Phasing claims as a matter of law. [DE 32, pp. 4-7]. Liberty Mutual argues that it cannot be held liable for delay damages, as a matter of law, because its bond does not specifically provide coverage for these damages. [DE 32, p.7-8].

On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact. *Hilburn v. Murata Elec. North Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). The court views the evidence, and all factual inferences arising from it, in the light most favorable to the nonmoving party. *Allen*, 121 F.3d at 646. Thus, "[i]f reasonable minds could differ on the inferences arising from

undisputed facts, then a court should deny summary judgment." *Id.* (quoting *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518 (11th Cir. 1992)).

### A. Solo is not entitled to summary judgment under the pay-when-paid clause

Solo argues that the subcontract bars Fisk's Phasing claims as a matter of law because the subcontract contains two provisions limiting Fisk's entitlement to payment when Solo has not received payment from the owner. [DE 32, pp. 6-7]. Article 7.7.1 of the subcontract provides: "Payment to Subcontractor for progress payments shall be strictly contingent upon receipt of payment by Contractor from the Owner for the work performed and/or the materials supplied by Subcontractor and incorporated into the site by Subcontractor for the proceeding month or months." [DE 1, p. 23]. Article 7.7.2 provides: "Payments shall be made to Subcontractor to the degree in which the Owner makes payments to Contractor. . . . No payment shall be due to Subcontractor unless Contractor has received payment for Subcontractor's work from Owner." [DE 1, p. 23].

Under Florida law, the enforceability of a "pay when paid" provision is determined as a matter of law:

> If a provision is clear and unambiguous, it is interpreted as setting a condition precedent to the general contractor's obligation to pay. If a provision is ambiguous, it is interpreted as fixing a reasonable time for the general contractor to pay.

*DEC Electric, Inc. v. Raphael Construction Corp.*, 558 So. 2d 427, 429 (Fla. 1990). "[I]n construing purported risk-shifting provisions, the burden is of clear and unequivocal expression is on the general contractor." *OBS Company Inc. v. Pace Construction Corp.*,

558 So.2d 404, 406 (Fla. 1990).

Fisk correctly points out that Article 7.7.1 is only applicable to progress payments. [DE 35, p. 19]. Neither party asserts that Fisk is seeking to recover for progress payments in the Phasing claims. Thus, Article 7.7.1 does not apply to Fisk's Phasing claims and cannot form the basis of a summary judgment in favor of Solo.

Fisk argues that Article 7.7.2 is also inapplicable because it is not an unambiguous "pay when paid" clause. Specifically, Fisk argues that the use of the word "unless" does not unambiguously indicate that payment by the owner is a condition precedent to Solo paying Fisk. [DE 35, p. 19]. The Court finds that the plain language of Article 7.7.2 unambiguously shifts the risk of nonpayment to Fisk.

The dictionary definition of "unless" is "except on the condition that." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1477 (3d ed. 2000). Inserting this definition for the word "unless" in the subcontract, Article 7.7.2 provides "No payment shall be due to Subcontractor [except on the condition that] Contractor has received payment for Subcontractor's work from Owner." The Court finds that this clause evinces a clear and unequivocal expression of Solo shifting the risk of nonpayment to Fisk. Thus, as a matter of law, Article 7.7.2 constitutes an enforceable pay-when-paid clause.

The analysis does not end here, however. The Court must determine if there is a material issue of fact whether Solo was paid for any portion of Fisk's Phasing claims. If so, Solo is not entitled to summary judgment on the basis of the pay-when-paid provision.

Solo filed the affidavit of its President, Randy Pierson, who states that MDAD denied

Fisk's Phasing claims and did not pay Solo any part of the claimed amounts. [DE 32, Ex. B, ¶ 17]. Fisk filed a competing affidavit of its Senior Vice President, James Muhl, stating that the Phasing claims were never denied by MDAD and that Fisk never received any denial. [DE 35-2, p. 7, ¶ 23]. Additionally, Muhl avers that Solo entered into a settlement agreement with MDAD that settled all of the Midfield Expansion Project claims. [DE 35-2, p. 7, ¶ 27]. The settlement agreement between MDAD and Solo, which has been filed with the Court, states that Solo accepts the settlement amount in "full accord and satisfaction of all monies due or under it in connection with the Project, and the work performed on the Project including but not limited to work performed by the contractor. . . and by their subcontractors." [DE 35-2, p. 26, ¶ 2].[2] The Court finds that Fisk has presented a material issue of fact whether Solo was paid by MDAD, pursuant to their settlement agreement, for all or some of Fisk's Phasing claims. Thus, Solo is not entitled to summary judgment on the Phasing claims under the pay-when-paid clause.[3]

---

[2] Solo did not file a reply in support of its summary judgment motion and, as result, did not refute Fisk's statement of facts concerning its settlement with MDAD. Solo belatedly moved to strike, from Fisk's response to the summary judgment motion, references to the mediation, on the ground that the mediation is confidential pursuant to Florida Statute section 44.405; Solo also seeks an order in limine, under Federal Rule of Evidence 408, barring this evidence at trial. [DE 48]. Because section 44.405 allows for disclosure of a written agreement reached during a mediation, which agreement has been filed with the Court [DE 35-2, p. 25-27], and the Court here need only rely on the information in that written agreement to resolve the question of summary judgment, the Court denies the motion to strike and defers for later consideration the motion in limine.

[3] Liberty did not move for summary judgment under the pay-when-paid clause. [DE 32, pp. 7-8]. Generally, under Florida law, a pay-when-paid clause does not relieve the surety of liability on a bond, such as the one here, that was issued pursuant to Florida Statute section 255.05. [DE 1, p. 9]; *Everett Painting Co., Inc. v. Padula & Wadsworth Const.*, 856 So.2d 1059, 1062 (Fla, 4th DCA 2003) (surety cannot create a conditional "pay-when-paid" bond when the bond is issued under section 255.05).

### B. Solo is not entitled to summary judgment under the no-delay-for-damages clause

Solo also argues that it is entitled to summary judgment on the Phasing claims based on Article 4.7 of the subcontract, which provides:

> In the event of any delays in the project, Subcontractor's sole remedy shall be to seek an extension of time in accordance with paragraph 4.5 above. Contractor shall not be liable for any delay damages, or damages in any way attributable to performing work out of sequence, acceleration claims, or any other similar type claims, incurred by Subcontractor arising out of or in any way associated with the performance of the Subcontract Agreement. [DE 1, Ex. 2].

To prevail on its motion for summary judgment under the no-delay for damages clause, Solo has the burden to demonstrate the absence of a genuine issue of material fact as to the applicability of the delay clause to the Phasing claims. Viewing the evidence and all factual inferences arising from it in the light most favorable to Fisk, as this Court must, Solo has failed to meet its burden.

No-damages-for-delay clauses, such as this one, are enforceable under Florida law. *See Southern Gulf Utilities, Inc. v. Boca Ciega Sanitary Dist.*, 238 So.2d 458, 459 (Fla. 1970); *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Texas,* 551 F.2d 1026, 1029 (5th Cir. 1977) (in a diversity action applying Alabama law the Court nevertheless found that no-damages-for-delay clauses generally are enforced, but strictly construed).[4] Moreover, under Florida law, a no-damages-for-delay clause does not bar recovery if the delays were

---

[4] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

occasioned by fraud, concealment, or active interference with the performance of the contract. *Marriott Corp. v. Dasta Construction Co.*, 26 F.3d 1057, 1067-68 (11th Cir. 1994). These exceptions are premised on an implied promise and obligation not to hinder or impede performance. *Id.* at 1068 (quotation and citation omitted).

Solo generally characterizes both Phasing claims as claims for delay damages [DE 32-2, p. 26, ¶ 12], and argues that both claims are thus barred as a matter of law. Fisk counters that the Phasing claims are for the costs of additional labor, services and material actually provided to Solo as a result of the radical changes in MOT Phasing and differing site conditions, not the costs of an idle workforce, and thus are not the type of damages barred by a no-damages-for-delay clause. [DE 35, p. 12; DE 35-2, p. 5, ¶¶ 16-17]. Fisk also argues that payment of some or all of the monies sought in the Phasing claims were authorized by other provisions of its agreement with Solo. [DE 35, pp. 17-18]. Neither party, however, has parsed out the specific costs sought by Fisk to enable the Court to determine into which of the above categories each individual items falls. Thus, Solo has failed to establish as matter of law that the amounts sought in the Phasing claims are delay damages as contemplated by Article 4.7 of the subcontract.

Moreover, Fisk argues that Solo engaged in fraud, concealment and active interference that renders the delay clause unenforceable. [DE 35, p. 13]. As already noted, courts do not enforce no-damages-for-delay clauses under these circumstances because there is an "implied promise and obligation to not hinder or impede performance." *Marriott*, 26 F.3d at 1068. In its first such claim, Fisk asserts that Solo's submission of the Phasing claims

to MDAD, and settlement with MDAD of those claims, amounts to bad faith by Solo that bars it from invoking the delay clause. [*Id.*]. However, even if Fisk is correct in its characterization of Solo's conduct, this took place after Fisk provided its services. Therefore, it can not be said that Solo in this manner hindered or impeded Fisk's ability to perform under the contract, and therefore this claim of bad faith cannot avoid the application of the delay clause.

Next, Fisk asserts that Solo engaged in concealment when it: (1) knowingly issued contract documents showing an MOT Phasing plan that had not been approved and, (2) failed to inform Fisk of that fact until after Fisk had Fisk relied on the original Phasing plan in preparing its bid. [DE 35, p. 13-14; 35-2, p. 4, ¶¶ 9-12].

Finally, Fisk contends that Solo and MDAD actively interfered with its performance under the subcontract by substantially increasing the duration of the MOT Phases and radically changing the sequence of work areas and the scope of the work in the Phases. [DE 35-2, p. 4, ¶ 13]. Fisk states that the increased costs for adverse working conditions caused the expenditures it seeks to recover through the Phasing claims. [DE 35-2, p. 5, ¶¶ 16, 17].

In addition to Solo's failure to establish that the Phasing claims fall within the scope of the delay clause, Fisk has presented facts which, if proven at trial, could support a jury's application of the concealment or active interference exceptions to the delay clause.[5] *See,*

---

[5] Fisk also argues that Solo waived the no-damages-for-delay provision when it certified under oath the validity of Fisk's Phasing claims to the MDAD. [DE 35, p. 18]. Generally a party can waive a contractual right through conduct that warrants an inference of the relinquishment of those rights. *Miami Dolphin, Ltd. v. Genden & Bach, P.A.*, 545 So.2d 294, 296 (Fla 3rd DCA 1989). Because it is not necessary for the resolution of the motion for summary judgment, the Court will

*e.g, United States v. David Boland, Inc.*, No. 6:05-cv-549-Orl-19JGG, 2006 WL 2683304, * 4 (M.D. Fla. Sept. 18, 2006) ("whether a party has actively interfered with another party's contractual obligation is a question usually inappropriate for resolution at the summary judgment stage."). Thus, the Court denies Solo's motion for summary judgment based on the no-damages-for-delay clause.

**B.     Liberty Mutual is not entitled to summary judgment**

Liberty Mutual has moved for summary judgment on the Phasing claims on the ground that its liability is limited by the surety bond to "labor, materials, or supplies" provided by subcontractors and "used directly or indirectly" by Solo. [DE 1, p. 9; DE 32, pp. 7-8]. Like Solo, Liberty Mutual does not parse out the components of the Phasing claims and relies on the conclusory averment that the claims are delay damages, and thus are not covered by the bond. [DE 32, p. 8]. As discussed above, Fisk disputes this characterization and has presented contrary averments that the Phasing claims are for additional labor, services , and materials provided to Solo. [DE 35-2, p. 5, ¶¶ 16-17].

Liberty Mutual's bond was issued pursuant to Florida Statute section 255.05, the Little Miller Act, which requires Solo, as an entity entering into a contract with the county for public construction work, to execute and deliver a payment and performance bond before commencing work. *Fisk Elec. Co. v. Travelers Casualty and Surety Co.*, No. 08-23210-CIV, 2009 WL 196032, * 2 (S.D. Fla. Jan. 23, 2009). Because the Little Miller Act is similar to

---

not address the issue of waiver at this time.

the federal Miller Act, which applies to contracts with the United States, the statutes are given similar construction. *Id.*

Under the Miller Act, a surety's liability includes "liability for all out-of-pocket expenditures for . . . labor or material, *including additional or increased expenditures caused by delay.*" *Pertun Const. Co. v. Harvester Group, Inc.*, 918 F.2d 915, 919 (11th Cir. 1990) (emphasis supplied). Viewing the evidence, and all factual inferences arising from it, in the light most favorable to Fisk, material issues of fact exist whether some or all of Fisk's Phasing claims are for out-of-pocket additional and increased expenditures of labor, materials and services caused by delay in the project, which are recoverable under the surety bond. Thus, Liberty Mutual's motion for summary judgment is denied.

DONE AND ORDERED in chambers in Miami, Florida, this 12th day of May, 2009.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record